UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MARK L. PARKER,

                Plaintiff,

     -against-                    MEMORANDUM & ORDER
                                       13-CV-6065(JS)(SIL)
BJ'S WHOLESALE CLUB, INC.,

                Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Chauncey D. Henry, Esq.
                     Jade Lacey Morrison, Esq.
                     Henry Law Group
                     825 E Gate Blvd, Suite 106
                     Garden City, NY 11530

For Defendant:     Sean Phillip O'Connor, Esq.
                     Morgan Brown & Joy LLP
                     200 State Street
                     Boston, MA 02109

SEYBERT, District Judge:

        On October 29, 2013, plaintiff Mark Parker ("Plaintiff") commenced this employment discrimination action against defendant BJ's Wholesale Club ("BJ's" or "Defendant") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; and Article 15 of the New York State Human Rights Law § 296 (the "NYSHRL").  Plaintiff also asserts a breach of contract claim under state law against Defendant.  Pending before the Court is Defendant's partial motion

to dismiss (Docket Entry 15). For the following reasons, Defendant's motion is GRANTED IN PART AND DENIED IN PART.

BACKGROUND[1]

Plaintiff, a forty-eight year old African American male, worked as a loss prevention employee at Defendant's store, located at 125 Green Acres Mall, Valley Stream, New York 11580. (Am. Compl., Docket Entry ¶ 15.) In that role, he was responsible for "checking customer receipts," among other "security duties." (Am. Compl. ¶ 17.) Plaintiff was employed at the store for less than six months before he was terminated on March 1, 2013. (See Am. Compl. ¶¶ 33, 61.)

I. Plaintiff's Racial Profiling Complaints

Plaintiff asserts that "on several [ ] occasions, [he] complained to members of Defendant BJ's management team regarding the discriminatory treatment of African American customers and employees . . . ." (Am. Compl. ¶ 24.) Specifically, Plaintiff complained once to a manager named "Bernard" and twice to a manager named "Winston" about "the selective enforcement of BJ's store policies" against African American customers. (Am. Compl. ¶¶ 26-28.) Plaintiff asserts that he "observed that customers of African American descent were detained for extended periods of time and

---

[1] The following facts are taken from Plaintiff's Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.

subject to greater security checks than were those similarly situated non-African American customers." (Am. Compl. ¶ 30) Because of these Complaints, Plaintiff alleges that he "became a target" by management. (Am. Compl. ¶ 32.)

II. The Events Leading to Plaintiff's Termination

On March 1, 2013, Plaintiff arrived at work at 2:20 PM and began brewing coffee in the break room. (Am. Compl. ¶¶ 33-35.) Soon afterward, Plaintiff was informed by his shift manager that Edward Eastern, BJ's General Manager, wanted to speak with him in his office. (Am. Compl. ¶ 36.)

Eastern informed Plaintiff that an anonymous employee reported that Plaintiff smelled like alcohol. (Am. Compl. ¶ 38.) Plaintiff "steadfastly denied consuming alcohol during company hours and averred that he was completely sober and ready to begin his shift." (Am. Compl. ¶ 38.) Eastern told Plaintiff he could either "submit to a random drug test" or he would be fired. (Am. Compl. ¶ 39.) Plaintiff claims that he asked to see BJ's drug and alcohol policy, but Eastern refused to provide it. (Compl. ¶ 40.) Plaintiff subsequently agreed to undergo a drug and alcohol test, which was administered at John F. Kennedy Airport ("J.F.K."). (Am. Compl. ¶¶ 40-41.) The Complaint is silent about the result of the drug and alcohol test, but Plaintiff states in his EEOC charge "I came back .06 and I was terminated." (O'Conner Aff., Docket Entry 15-1, Ex. A.)

While waiting to be taken to J.F.K. for the test, Plaintiff asked about the location of the car they were going to use make the trip. Plaintiff claims Eastern stated in response, "[y]ou are going to look like Magilla the Gorilla in that car." (Am. Compl. ¶ 53.) According to Plaintiff, Eastern previously made another derogatory remark three months earlier in the break room. Plaintiff "stated in a jovial manner, 'You ain't a cowboy unless you have a good cup of coffee . . . .'" (Am. Compl. ¶ 56.) Eastern, who was present in the break room, responded "and a good strong rope too." (Am. Compl. ¶ 56.) Plaintiff alleges that "Eastern's characterization of the term "rope" [ ] is symbolic with the Jim Crow era noose.'" (Am. Compl. ¶ 56.)

Plaintiff alleges that he was "singled out" to take a drug test because of his race. (Compl. ¶ 50.) In support, Plaintiff alleges that two younger white employees who were known to consume drugs and alcohol at work were not required to take random drug tests. (Am. Compl. ¶¶ 43-44.)

On May 28, 2013, Plaintiff filed an EEOC Charge which states as follows:

> I have been employed by Respondent since September 5, 2012. I have been qualified for and performed my job satisfactory [sic] at all times.
>
> On March 1, 2013, I was made to go take a drug test because someone said they smelled alcohol on me. I was the only one singled out to go and take a drug test ever. Several other

4

> employees have come to work smelling of alcohol and some even smoke pot during work hours and no one else has ever been made to go for a drug test. It came back .06 and I was terminated.
>
> I believe I was singled out and treated differently than others due to my race in violation of Title VII of the Civil Rights Act of 1964, as amended.

(O'Conner Aff. Ex. A.)

III. <u>Denial of a Raise</u>

Plaintiff further claims that he was fired, in part, because of his age. According to the Complaint, BJ's sought to deny Plaintiff a raise, which BJ's customarily pays to its employees after six months of satisfactory employment, because Plaintiff was already "one of the highest paid and most senior employees assigned to BJ's loss prevention unit." (Am. Compl. ¶¶ 83, 58-60.) Plaintiff also contends that he was denied a raise customarily paid to personnel after ninety days of employment. (Am. Compl. ¶ 60.)

Plaintiff claims in his Amended Complaint that he was discriminated against based upon his race and age in violation of Title VII, the ADEA, and the NYSHRL. (Am. Compl. ¶ 1.) Plaintiff specifically brings six separate causes of action against Defendant, ranging from racial discrimination to breach of contract. (Am. Compl. ¶¶ 12-19.) Defendant moves to dismiss a number of Plaintiff's claims. In support, it makes the following

arguments: (1) Plaintiff's claims for retaliation, racial discrimination, and compensation discrimination fail as a matter of law because Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's hostile work environment claims should also be dismissed because they were not properly pleaded; and (3) Plaintiff's breach of contract claim fails as a matter of law because Plaintiff was an employee at will. (Def.'s Br., Docket Entry 15-2, at 6-20.)

DISCUSSION

The Court will first address the legal standard before turning to Defendant's motion.

I. Standard of Review

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive

a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

## II. Failure to Exhaust Administrative Remedies

Defendant first argues that Plaintiff's claims for disparate treatment (Count I), age discrimination (Count II) racial discrimination (Count III), and retaliation (Count IV) should be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to these claims. (Def.'s Br. at 6-12.) Plaintiff argues in opposition that these Counts should proceed because they are "reasonably related" to the allegations in his EEOC charge. (Pl.'s Opp. Br., Docket Entry 17, at 17-18.)

7

"'Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court.'" Tanvir v. .N.Y.C Health & Hosps. Corp., 480 F. App'x 620, 621 (2d Cir. 2012) (quoting Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001)). Nevertheless, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." Shah v. N.Y. City Dep't of Civ. Serv., 168 F.3d 610, 614 (2d Cir. 1999). The Second Circuit has explained that:

> A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made. In this inquiry, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving. The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases.

Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (internal citations, alteration, and quotation marks omitted). Here, Plaintiff's EEOC charge only contains the allegation that he was "singled out" to take a test for drugs and alcohol because of his race. (Am. Compl. ¶ 50.) The charge contains no facts related to: (1) Plaintiff's claim that BJ's managers fired him so that

8

they didn't have to pay him a raise, or (2) that BJ's retaliated against Plaintiff for complaining about the treatment of African American customers. The EEOC was not put on notice of either of these claims. Hoffman v. Williamsville Sch. Dist., 443 F. App'x 647, 650 (2d Cir. 2011) (holding that a retaliation claim was "not reasonably related to the allegations in the Charge because nothing in the Charge provided the EEOC adequate notice to investigate possible retaliation"); O'Hara v. Mem'l Sloan-Kettering Cancer Ctr., 27 F. App'x 69, 70-71 (2d Cir. 2001) ("The scope of an EEOC investigation cannot reasonably be expected to encompass retaliation when [plaintiff] failed to put the agency on notice that she had engaged in the type of protected activity that is the predicate to a retaliation claim."). However, the EEOC charge, which states that Plaintiff "was singled out and treated differently [ ]due to [his] race," sufficiently put the EEOC on notice of Plaintiff's disparate treatment and racial discrimination claims. (O'Conner Aff. Ex. A.)

Plaintiff claims for age discrimination (Count II) and retaliation (Count IV) are therefore DISMISSED WITH PREJUDICE.

III. Breach of Contract

Defendant argues that Plaintiff's breach of contract claim fails as a matter of law because he was an employee at will. (Def.'s Br. at 18.) Plaintiff does not deny that he was an employee at will without a contract, but argues that BJ's breached an

9

implied contract when it fired him for discriminatory reasons. (See Pl.'s Opp. Br. at 16.)

Under New York law, "[a]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." De Petris v. Union Settlement Assoc., Inc., 86 N.Y.2d 406, 410, 657 N.E.2d 269, 271, 633 N.Y.S.2d 274, 276, (1995); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 216 (S.D.N.Y. 2003) (finding that "as an at-will employee, who can be terminated at any time and for any reason, [Plaintiff could] not maintain an action for breach of contract where no such contract existed") aff'd, 99 F. App'x 259 (2d Cir. 2004).

Here, Plaintiff's allegation that BJ's breached an implied contract by terminating him for discriminatory reasons fails. There is no dispute that Plaintiff was an employee without an employment contract. "Although it is unlawful for an employer to terminate an employee for discriminatory reasons, the proper remedy for a person aggrieved in this manner is not a cause of action for breach of contract." Benson v. N. Shore-Long Island Jewish Health Sys., 482 F. Supp. 2d 320, 331 (E.D.N.Y. 2007). There is no need for Plaintiff to rehash his discrimination claims through an additional cause of action for breach of contract. Plaintiff's breach of contract cause of action is therefore DISMISSED WITH PREJUDICE.

IV. <u>Boilerplate Claims</u>

The parties dispute whether Plaintiff claims alleging "racial discrimination" under Title VII and the NYSHRL (Counts III and V) are in fact claims for a hostile work environment. (See Def.'s Reply Br., Docket Entry 18, at 2-3; Pl.'s Opp. Br. at 1.) The confusion exists because Counts III and V were poorly drafted using boilerplate language, which does not provide notice of Plaintiff's specific allegations. Therefore, Counts III and V of the Complaint are DISMISSED WITHOUT PREJUDICE and with LEAVE TO REPLEAD.

[BOTTOM HALF OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

Defendant's motion to dismiss (Docket Entry 15) is GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiff's claims for age discrimination (Count II), retaliation (Count IV), and breach of contract are DISMISSED WITH PREJUDICE.  Plaintiff's claims for racial discrimination under Title VII and the NYSHRL (Counts III and V) are DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO REPLEAD.  The balance of Defendant's motion is DENIED.  Thus, Plaintiff's claim for disparate treatment (Count I) is the only claim that remains unchanged by this Order. If Plaintiff wishes to file a Second Amended Complaint he must do so within thirty (30) days of the date of this Order.  If Plaintiff fails to file a Second Amended Complaint Counts III and V will be DISMISSED WITH PREJUDICE.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March  18 , 2015
       Central Islip, New York